FILED ___ LODGED
RECEIVED ___ COPY

MAY - 4 2004

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES DRNEK, et al., | No. CIV 01-242-TUC-WDB |
| Plaintiffs, | **ORDER** |
| vs. | |
| THE VARIABLE ANNUITY LIFE INSURANCE, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Summary Judgment and related Motion to Strike and Plaintiffs' Motion for Discovery Sanctions. All have been briefed and oral argument on the Motion for Summary Judgment and Motion for Discovery Sanctions was held on April 21, 2004. Also pending is discovery dispute, previously heard on February 26, 2004, for which additional briefing was ordered and received.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants, Variable Annuity Life Insurance Co. ("VALIC") and Variable Annuity Marketing Co. ("VAMCO"), sold variable annuities, in part based on their tax-deferred status to persons funding their retirement accounts (qualified plans). However, the tax-deferred status of these investments is redundant in this situation, as 401(k), 403(b) and IRA accounts are already tax-deferred. The National Association of Securities Dealers ("NASD") has told

members that they should affirmatively disclose this to purchasers and not suggest annuities to clients unless they have either a specific need for the insurance component of the investment or have fully funded their qualified plans. this information has been disseminated by both the NASD and the SEC.

Plaintiffs filed a 21 count complaint against Defendants. After two Motions to Dismiss, the claims have been whittled down to Plaintiffs' claims of violations of the anti-fraud provisions of the Securities and Exchange Acts (Sections 10(b) and Rule 10b-5) based on Defendants' alleged failure to disclose material information that (1) the consumers were buying an unnecessary and redundant product, and (2) a variable annuity was a suitable investment only when an insurance need supported the recommendation. Plaintiffs allege they have suffered damages in that they paid excessive fees because they were sold these investment vehicles.

## II. THE MOTION FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment on the grounds that Plaintiffs cannot show that there was any breach of duty on Defendants part that would lead a jury to find that Defendants committed fraud under Section 10(b) and Rule 10b-5. Among the arguments put forward by Defendants are (1) Defendants fulfilled any duty to disclose the source of the tax deferral in their prospectus; (2) there is no duty to disclose the tax information because tax law is within the public domain; and (3) the issue had been debated in the public domain. Defendants also argue that the NASD conduct rules do not create a duty that is mandated by Section 10(b).

## III. ANALYSIS

### A. **Summary Judgment Standard**

Rule 56(c), Fed.R.Civ.P., provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, the moving party bears the

initial burden of identifying the lack of evidence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has shown that there is an absence of a genuine issue of material fact, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts offered by the opposing party should not be "merely colorable," but rather "significantly probative" of the issues. *Anderson*, 477 U.S. at 249-50.

**B.    Fraud Under the Securities and Exchange Act**

Section 10(b) of the 1934 Securities and Exchange Act makes it unlawful for one "[t]o use or employ, in connection with the purchase or sale of any security. . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j. Thus, the SEC promulgated Rule 10b-5, providing:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5.

To prove a violation of either Section 10(b) or Rule 10b-5, the plaintiff must demonstrate that the alleged fraud occurred "in connection with the purchase or sale of a security" and (1) a misrepresentation or omission where there exists some duty to disclose; (2) materiality; (3) scienter (intent to defraud or deceive); (4) reliance; and (5) causation. *See The Ambassador Hotel Company, Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017, 1025 (9th Cir. 1999); *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992).

### C. <u>Duty</u>

Defendants have argued that Plaintiffs cannot make the showing necessary to prove a violation of Section 10(b), because they cannot show the first element, i.e. that an omission was made where there was a duty to disclose. Therefore, the Court looks to the standard of duty to which the Defendant is held. The Court of Appeals in *White v. Abrams*, 495 F.2d 724 (9th Cir. 1974), laid out the factors for determining duty in a securities fraud case in its "flexible duty" test. The factors to be considered were (1) the relationship of the defendant to the plaintiff; (2) defendant's access to the information as compared to that of the plaintiff; (3) defendant's benefit derived from the relationship; (4) defendant's awareness of whether plaintiff was relying on their relationship in making his or her investment decisions; and (5) defendant's activity in initiating the transaction in question. *Id.* at 735-36.

*White* has since been overruled on the issue of whether fraud can be found where defendant is merely negligent, in favor of a scienter requirement. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990). Instead, it has been suggested that the test for whether a duty to disclose exists was enunciated by the Supreme Court in *Chiarella v. United States*, 445 U.S. 222 (1980). *See Levine v. Diamanthuset*, 1992 WL 226905 (N.D.Cal.), Fed.Sec.L.Rep. P 96,934. In *Chiarella*, the Supreme Court stated that a duty to disclose may arise in an impersonal market transaction if the parties had a fiduciary or agency relationship, or if prior dealings or circumstances were such that one party had placed trust or confidence in the other. *Id.* at 232-233. Thus, although White may have been overruled, certain aspects of the flexible duty test, with respect to the relationship between the parties, still remains. We must therefore look to the relationship between the parties and whether the plaintiffs might have placed trust or confidence in defendants.

Plaintiffs have alleged that the Defendants' sales people held themselves out as financial advisors skilled in the creation of retirement plans and "pursued, fostered and accepted a relationship with their customers that was based on a high degree of trust and confidence by the customer." [First Amended Complaint, ¶ 101] Plaintiffs have stated that

Defendants' salespeople did not represent themselves as insurance salesmen, but instead as advisors, who asked detailed questions about the buyers' savings and finances in order to give the impression that they were interested in finding the appropriate product to fund a retirement account.

Thus, it appears that there is sufficient evidence that a reasonable juror could find that there was relationship of trust between the buyers and sellers of the variable annuities, and this was not an "over the counter" sales transaction. Such a relationship would create a duty to inform the buyers of material information, including the information described in NASD Notice to Members 99-35. There is, therefore, a genuine issue of material fact on the issue of Defendants' duty to disclose to the Plaintiffs and, ultimately, whether Defendants was engaged in fraud.

### D. **Public Domain**

Defendants have argued that even were the Court to find sufficient evidence to suggest that there was a duty to disclose, the information about the tax-deferred nature of the accounts and the investments was in the public domain and did not need to be disclosed. The Court disagrees. While the jury might decide that the public nature of this information trumps its materiality, when considering whether a fraud occurred, the Court finds that the existence of NTM 99-35 is sufficient evidence to find that a material issue of fact exists.

### IV. DISCOVERY SANCTIONS

Plaintiffs have moved for sanctions against Defendants on the grounds that Defendants implemented a new email document retention policy after the beginning of this suit and that under the policy potentially relative emails may have been destroyed. Plaintiffs ask that the Court infer that the destroyed emails would have been supportive of Plaintiffs' positions, as well as require Defendants to attempt to reconstruct the lost emails.

However, Plaintiffs have offered no evidence that any email were destroyed that in any way relate to the subject matter of this case or possibly would have lead to discoverable materials. On this tenuous allegation, the Court cannot find that the newly implemented

policy was either intended to destroy relevant documents or actually did so. Sanctions are not warranted.

### V.   CONCLUSION

Accordingly,

IT IS HEREBY **ORDERED** that the Motion for Summary Judgment is **DENIED**.

IT IS FURTHER **ORDERED** that the Motion to Strike is **DENIED**.

IT IS FURTHER **ORDERED** that the Motion for Discovery Sanctions is **DENIED**.

DATED this 3 day of May, 2004.

William D. Browning
Senior United States District Judge